21 F.3d 428
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Carl Steven LEWIS, Petitioner-Appellant,
v.
Anthony BRIGANO, Warden, Respondent-Appellee.
 No. 93-3659.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1994.
 
 Before: KENNEDY, JONES and SUHRHEINRICH, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner Carl Steven Lewis appeals the District Court judgment denying his petition for writ of habeas corpus. Petitioner raises six issues on appeal including that the District Court erred by failing to grant his petition because the state trial court erroneously admitted out-of-court statements by a co-defendant who was unavailable because she refused to testify. For the reasons stated below, we affirm.
 
 I.
 
 2
 This case concerns the murder of James Steurer, Sr. ("James, Sr.") at his farm in Coshocton County, Ohio, where he grew marijuana. In 1987, James, Sr.'s daughter, Marilyn Steurer, and her friend Robin Peabody, introduced James, Sr. to a woman named Sandra Griffin. In 1988, James, Sr. invited Griffin to come and stay with him in Coshocton for a week in exchange for a pound of marijuana. At that time, Griffin, who was from Cleveland, Tennessee, was sexually involved with petitioner. Griffin and James, Sr. continued to see each other following the week-long visit. Griffin would come to Coshocton or he would travel to Cleveland. James, Sr. gave Griffin money and marijuana. She referred to James, Sr. as her "sugar daddy." During this time, Griffin was also still involved with petitioner who sold marijuana in Tennessee that came from the Coshocton farm.
 
 
 3
 In June, 1988, James Steurer, II ("James, II") moved to the Coshocton farm to live with his father, James, Sr. He participated in the marijuana operation, keeping machinery operating. By his own testimony, James, II hated his father. While staying at the farm, James, II met Griffin. He became friends with Griffin and petitioner, eventually moving to Tennessee to live with them. Griffin's relationship with James, Sr. deteriorated in 1988. He was angry with her over her drug use, and he hit her several times. She stated that she would kill him for hitting her. About the same time, Griffin and petitioner began to argue over her relationship with James, Sr.
 
 
 4
 On January 3, 1989, Griffin, James, II and petitioner drove from Cleveland to Coshocton, arriving at the farm in the early morning hours of January 4th. In the morning, while James, Sr. was in the barn feeding his animals, petitioner and James, II went down to the barn. When James, Sr. began to walk to the house, either James, II or petitioner shot him in the head, killing him. James, II and petitioner then loaded the body on a tractor. They drove into the woods, where they laid the body on the ground. They put kindling wood on top of the body, then lit the fire. When the two men returned to the house, they helped Griffin load weapons into the car. They drove back to Tennessee. They buried some of the weapons and sold others. Petitioner and Griffin threw the murder weapon, a .357 Smith & Wesson, over a bridge. Cleveland, Tennessee police recovered the gun along the bank of a creek.
 
 
 5
 The day after the killing, several hunters came upon the burned area. They saw a rib cage which was still smoldering. They assumed it was part of an animal. Later in January, the Coshocton County Sheriff was notified of the disappearance of James, Sr. At the burn site, they recovered his skull, which showed signs of an injury by a blunt instrument. They also found vertebrae, part of his left arm and left leg, teeth, and buttons. Steel toes from a pair of shoes were found pointed up, as if a body had been laying there. The body of James, Sr. was identified through dental records. The connection between the murder and petitioner was made through an informant in Tennessee, to whom Griffin had spoken about the Ohio murder.
 
 
 6
 On December 12, 1989, following a jury trial lasting more than twenty days, a jury in the Coshocton County Court of Common Pleas found petitioner guilty of complicity in the commission of the following offenses: 1) aggravated murder with an aggravated robbery specification; 2) unlawful possession of a dangerous ordnance; 3) grand theft; 4) aggravated robbery with a firearm specification; and 5) gross abuse of a corpse.[1] On January 17, 1990, the court sentenced petitioner to life imprisonment for the aggravated murder; eight to twenty-five years for the aggravated robbery; and three years on the firearm specification. The sentences for the dangerous ordnance and grand theft convictions were merged with the aggravated robbery and he was sentenced to a definite term of one year imprisonment for gross abuse of a corpse.
 
 
 7
 On August 15, 1990, petitioner, represented by counsel, appealed his conviction to the Court of Appeals for the Fifth District of Ohio. On February 13, 1991, the Court of Appeals affirmed petitioner's conviction. Petitioner, acting pro se, sought leave to appeal to the Supreme Court of Ohio. On June 21, 1991, the Ohio Supreme Court dismissed petitioner's appeal for lack of prosecution. On January 22, 1992, the Ohio Supreme Court granted petitioner's request to file a late appeal, which he did. On April 15, 1992, the Supreme Court dismissed petitioner's appeal for want of a substantial constitutional question.
 
 
 8
 On July 21, 1992, petitioner filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. Sec. 2254. The District Court, on May 19, 1993, dismissed petitioner's petition by opinion and order. On appeal, defendant raises six of nine issues argued before the District Court:
 
 
 9
 1. Petitioner's confrontation rights were violated when the trial court ruled that declarations made by co-defendant Sandra Griffin to third party witnesses were admissible evidence.
 
 
 10
 2. Petitioner was deprived of due process when the trial court arbitrarily excluded certain hearsay declarations against interest while admitting other such statements.
 
 
 11
 3. Petitioner was deprived of due process and the right to confrontation when the trial court refused to compel government witnesses to answer questions on cross-examination.
 
 
 12
 4. Petitioner was deprived of a fundamentally fair trial when the trial court failed to completely and correctly instruct the jury on the crime of complicity.
 
 
 13
 5. Petitioner's conviction of aggravated robbery with a firearm is inconsistent with his conviction of aggravated murder with a firearm.
 
 
 14
 6. The state failed to prove that petitioner murdered with prior calculation and design, or with an aggravated robbery.
 
 II.
 
 15
 Petitioner argues that the state court erred in admitting testimony by several witnesses regarding statements made by co-defendant Griffin. Griffin invoked her Fifth Amendment right against self-incrimination, making herself an unavailable witness under Ohio Evid.R. 804(A). The trial court admitted the following testimony.
 
 
 16
 Janice Steurer, daughter-in-law of the victim, testified that she overheard an argument between Griffin and James, Sr. She testified that Griffin thought it wasn't right that James, Sr. hadn't bought Christmas presents for family members. She further testified that she got the impression that things weren't going well between Griffin and James, Sr. The state trial court and court of appeals held the first statement admissible because it was used to establish Griffin's state of mind. The testimony regarding Griffin and the victim's relationship was held admissible because it concerned a personal observation by the witness not a hearsay statement made by Griffin.
 
 
 17
 Robin Peabody, a friend of Griffin, testified that Griffin told her that Griffin was upset with James, Sr. for taking her Xanax pills away. The state court of appeals upheld the admission of the testimony on the ground that it was offered to show Griffin's state of mind. The District Court agreed with the state courts' analysis of Janice Steurer's and Peabody's testimony and held that their admission did not deprive petitioner of a fundamentally fair trial.
 
 
 18
 Tracy Bruce, another friend of Griffin from Cleveland, Tennessee, testified to seeing James, Sr. strike Griffin twice. Bruce further testified that Griffin told her that Griffin would kill James, Sr. if he hit her again. The state court of appeals held this testimony admissible because Griffin's statement was against her penal interest.
 
 
 19
 James Pullins, an acquaintance of Griffin, testified that on January 1, 1989, Griffin told him that she, James, II, Steve Lewis, and petitioner were going to "take care" of her "sugar daddy." He further testified that on January 8 or 9, 1989, four or five days after the murder, Griffin told him that she, petitioner and James, II had shot her "sugar daddy." The state court of appeals held that the trial court had not abused its discretion in admitting Bruce's and Pullins' testimony as trustworthy declarations against penal interest. The District Court upheld the introduction of Pullins' and Bruce's testimony on the ground that there were sufficient indicia of reliability and, in any event, that their testimony was cumulative to other testimony establishing Griffin's and petitioner's role in the offense.
 
 
 20
 The petitioner argues that his rights under the Confrontation Clause were violated and thus his claim is one of a constitutional trial error. Our review on habeas corpus of constitutional trial errors is more limited than on direct review. If we conclude that the Constitution has been violated at trial, we will grant habeas corpus relief only if the petitioner can establish actual prejudice, that is, that the error had a substantial and injurious influence on the jury's verdict. Brecht v. Abrahamson, 113 S.Ct. 1710, 1722 (1993).
 
 
 21
 Turning to this case, we affirm the District Court's rulings on the described testimony with the exception of James Pullins' testimony. Pullins testified to out-of-court statements made by petitioner's co-defendant Griffin that were incriminating of Griffin and petitioner. Griffin did not take the stand at trial. Admissions by a co-defendant that incriminate the defendant are inadmissible, under the Confrontation Clause, when the co-defendant refuses to take the stand at trial. Bruton v. United States, 389 U.S. 818 (1967). Therefore, petitioner's confrontation rights were violated by Pullins' testimony.
 
 
 22
 We conclude, however, that the errors do not warrant reversal. Petitioner's role in planning the murder was established by the testimony of Terry Wright, petitioner's cell mate, to whom petitioner confessed, and the testimony of James, II, who had personal knowledge of the crime. Griffin's statements to which Pullins testified were isolated and made while she was influenced by drugs, which petitioner established on cross-examination of Pullins. The statements' probative value is therefore minimal compared to the other evidence introduced. We conclude, as did the District Court, that in light of the record Pullins' testimony did not have a substantial and injurious influence on the jury's verdict.
 
 III.
 
 23
 We find no merit in the remaining issues but we shall discuss them briefly. First, petitioner claims a violation of due process in the exclusion of the testimony of Julie Farmer, which was offered by the prosecution and objected to by Lewis. Farmer would have testified as to inculpatory statements made by Griffin. The evidence was excluded because of the effects of Griffin's drug use at that particular time, as testified to by Farmer. We agree with the state court of appeals and the District Court below that the exclusion of Farmer's testimony did not prejudice petitioner. In fact, it was petitioner who objected to Farmer's testimony at trial.
 
 
 24
 Second, petitioner argues that he was denied his right to due process and confrontation when the state trial court refused to compel Tex and Kim Zimmerman to answer certain questions on cross-examination. When petitioner's counsel asked them whether they had been involved in the marijuana operation at the farm, these witnesses invoked their Fifth Amendment right against self-incrimination. The court refused to compel them to answer.
 
 
 25
 We find no constitutional violation. The witnesses properly invoked their right against self-incrimination. The question then is whether it was error to have permitted their direct testimony given petitioner's inability to cross-examine them concerning their marijuana activities. The right of confrontation does not require exclusion of all statements whenever the declarant is not subject to cross-examination. Out-of-court statements by unavailable witnesses, for example, may be admitted against a defendant when the statements fall into a traditional hearsay exception or are supported by sufficient indicia of reliability. Ohio v. Roberts, 448 U.S. 56, 66 (1980). Extrajudicial statements made by an accomplice that inculpate the defendant are, however, inherently unreliable. See Lee v. Illinois, 476 U.S. 530, 546 (1986); Bruton, 389 U.S. 818.
 
 
 26
 Several factors distinguish the Zimmermans' testimony from those in which cross-examination is required. The Zimmermans' testimony was given in court so the witnesses were face-to-face with petitioner and the jury could judge the witnesses' demeanor. More importantly, petitioner has failed to articulate why establishing the witnesses' involvement with the marijuana operations was vital to petitioner's defense. Apparently, the state called the Zimmermans in anticipation of a defense by petitioner that Tex Zimmerman had killed James, Sr. Petitioner did not, however, make such a defense. Furthermore, the Zimmermans' involvement in the marijuana operations was amply established by the testimony of Marilyn Steurer, Pam Neely, and Robin Peabody. We cannot conclude, therefore, that the trial court's refusal to compel the Zimmermans to answer questions about their involvement in the marijuana farm deprived petitioner of due process or his right of confrontation.
 
 
 27
 Third, petitioner argues that the trial court improperly instructed the jury on the crime of complicity. The court denied petitioner's request for an instruction that the mere presence and consent of petitioner during the commission of the crime does not make him an aider or abettor. The trial court instructed the jury: "Aid means to help, assist, or strengthen. Abet means to encourage, counsel, incite, or assist." This instruction conveyed the substance of the charged crime and therefore petitioner was not deprived of a fundamentally fair trial.
 
 
 28
 Fourth, petitioner challenges his conviction of aggravated robbery with a firearm. He was convicted of aggravated murder with an aggravated robbery specification, but was not convicted of possession of a firearm during the murder. He was also convicted of aggravated robbery with a firearm. Petitioner argues that it is inconsistent for the state to prove he committed aggravated robbery with a firearm but fail to prove that he committed aggravated murder with a firearm. We disagree. The jury could reasonably have found that while the state did not prove beyond a reasonable doubt that petitioner pulled the trigger to cause James Sr.'s murder, he did carry operable weapons to the car in committing the aggravated robbery.
 
 
 29
 Finally, petitioner challenges his conviction for aggravated murder with an armed robbery specification. First, he argues that the state failed to prove the murder was committed with prior calculation and design. Second, petitioner argues that the state failed to prove that the intent to rob was present at the time of the murder. As noted above, petitioner's cell mate and James, II testified to petitioner's plan to kill James, Sr. In addition, James, II testified that during their planning sessions, he, Griffin, and petitioner discussed how to kill James, Sr. and take his guns. When James, II and petitioner returned from cremating the body, Griffin already had James, Sr.'s handguns on the bed, and Griffin and petitioner requested that James, II unlock James, Sr.'s gun closet. Viewed in the light most favorable to the government, there was sufficient evidence to support the challenged conviction.
 
 IV.
 
 30
 For the reasons stated above, the District Court's denial of petitioner's request for a writ of habeas corpus is AFFIRMED.
 
 
 
 [1]
 Petitioner was also indicted on a count of trafficking in marijuana. With consent of counsel, the trial court dismissed this count